# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSHUA KASZUBA,** | ) | |
| **No. R13047,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00952-JPG** |
| | ) | |
| **S.A. GODINEZ,** | ) | |
| **TIMOTHY VEATH,** | ) | |
| **BRANDON ANTHONEY,** | ) | |
| **MICHAEL ATCHISON,** | ) | |
| **DAVID JOHNSON,** | ) | |
| **REBECCA COWAN,** | ) | |
| **SHERRY BENTON,** | ) | |
| **MINH SCOTT, and** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Joshua Kaszuba, an inmate in Pontiac Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on multiple disciplinary convictions he received while housed in Menard Correctional Center. The initial complaint and first amended complaint were both dismissed without prejudice due to pleading deficiencies (*see* Docs. 6, 9).

The second amended complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility.  *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 821 (7th Cir. 2009).

## The Second Amended Complaint

According to the second amended complaint, Plaintiff Kaszuba received four disciplinary tickets in 2012 and was ultimately found guilty and punished on each occasion.  He brings this Section 1983 action alleging that he was denied due process with respect to each ticket, the Adjustment Committee hearings and investigations, and in the subsequent affirmations of those disciplinary convictions.   Although the second amended complaint does not include the documentation or all of the detail that was offered in the original complaint, the disciplinary offenses and punishment imposed are summarized in the second amended complaint.  For the sake of clarity, the Court repeats its previous summary of the four disciplinary incidents at issue:

1. An April 30, 2012, incident where Plaintiff allegedly (a) conspired to have a cellphone and marijuana brought into the prison, and (b) had sexual contact with his girlfriend during visitation, for which he was convicted and penalized with one year's demotion to C-grade, one year in segregation, revocation of six months of good conduct credit, commissary restrictions for one year, and restricted contact visits for six months;

2. A May 8, 2012, ticket relative to a letter purportedly from Plaintiff to a gang leader seeking to "fix" Plaintiff's segregation "situation," where the ticket was dated April 26, 2012 (before the Intelligence Unit and reporting officer

received the letter); Plaintiff was penalized with demotion to C-grade, placement in segregation, commissary restrictions, and restricted contact visits, all for six months;

3. A May 26, 2012, alleged offer by Plaintiff to a correctional officer involving the exchange of a contraband cellphone for sex with Plaintiff's girlfriend, for which Plaintiff was penalized with demotion to C-grade, placement in segregation, and commissary restrictions, all for one year; and

4. A May 29, 2012, incident where Plaintiff allegedly threatened to kill a correctional officer, for which Plaintiff was penalized with three months' demotion to C-grade, segregation, and commissary restrictions, as well as the revocation of three months' good conduct credit.

Plaintiff alleges that, with respect to each disciplinary ticket, the Adjustment Committee found him guilty based on inadequate evidence and without any meaningful investigation. He asserts that he is factually innocent of each charge, and that procedural errors further invalidate each disciplinary decision. He further alleges that the disciplinary convictions were approved at the institutional level without any investigation or consideration of his claimed errors. Similarly, Plaintiff perceives that the Illinois Department of Corrections' Administrative Review Board effectively "rubber stamped" his appeals.

Plaintiff brings suit against the members of the Adjustment Committee, the Committee's investigator, the wardens who (in some, but not all instances) approved the Committee's decisions, the Administrative Review Board chairperson, and the Director of the Department of Corrections. Plaintiff does not specifically request restoration of lost good time credits; rather, he seeks compensatory damages, and injunctive relief in the form of a transfer to Dixon Correctional Center. The case caption indicates that the defendants are sued in their official capacities.

## Discussion

### Capacity for Suit

The caption of the second amended complaint indicates that the defendants are sued in their official capacities.  Monetary damages and affirmative injunctive relief are sought.

Official capacity suits are a way of suing the governmental entity of which the defendant official is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Liability stems from the execution of an official policy, practice or custom by a government official.  *See*, e.g., *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).  However, the Eleventh Amendment precludes an award of monetary damages in an official capacity suit, including punitive damages, leaving declaratory and injunctive relief as possible remedies.  *See* 42 U.S.C. § 1981a(b)(1); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010).  In contrast, individual capacity suits seek to impose personal liability upon a government official for actions taken under color of state law—focusing on the constitutional torts of the individual official.  *Graham*, 473 U.S. at 166.  Monetary damages are an available remedy for individual capacity claims.  *See,* e.g., *Burd v. Sessler*, 702 F.3d 429, 432 (7th Cir. 2012).  An individual capacity suit requires a showing of personal involvement by the government actor.  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

After reading the second amended complaint as a whole, and in recognition of Plaintiff's *pro se* status, the Court construes the second amended complaint as asserting claims against all of the defendants in their individual capacities.  Illinois Department of Corrections ("I.D.O.C.") Director S.A. Godinez is also viewed as being sued in his official capacity for purposes of injunctive relief.

**The April 30 and May 29 Disciplinary Reports**

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 claim for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not a cognizable claim until that conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87.   In *Edwards v. Balisok,* 520 U.S. 641 (1997), the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [an inmate's] good time credits" are not cognizable under Section 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy.  *Id.* at 646–48.

*Balisok* is particularly instructive in this situation.  Like Plaintiff Kaszuba, inmate Balisok elected not to seek the restoration of good conduct credits; rather, Balisok sought only declaratory relief and monetary damages under Section 1983, based on the alleged denial of due process.   It was alleged that the hearing officer had concealed exculpatory evidence, and refused to question Balisok's witness (denying Balisok a defense), and also failed to adequately support the disciplinary decision.   Another defendant in *Balisok* allegedly rejected Balisok's appeal based on a page limitation.  The Supreme Court drew a distinction between claiming the denial of good conduct credit without due process, and being deprived good conduct credit undeservedly.  *See Balisok*, 520 U.S. at 645.   The Court recognized that at least nominal damages could be recovered for any procedural due process violation that would *not* throw the validity of the conviction into question.  However, in Balisok's situation, the nature of the alleged due process violations—an impartial hearing officer and the denial of a defense— necessarily implied the invalidity of the disciplinary conviction (and by implication any subsequent affirmation of that decision).  *See Id*. at 646-47.  Pursuant to *Heck*, all of Balisok's

Section 1983 claims were dismissed until such time as he upset the disciplinary conviction.  It is worth noting that a minority of Justices perceived that Balisok's claims against the initial decision-maker were precluded under *Heck*, but other alleged procedural defects, such as failing to specify facts and evidence supporting the finding of guilt, were immediately cognizable under Section 1983.  *Id*. at 649-50.

The April 30 and May 29 disciplinary reports resulted in Plaintiff losing good conduct time, which has the effect of denying him time that would shorten his term of confinement.  Plaintiff does not specifically seek restoration of lost good conduct credits in those instances where he has lost credit.  However, Plaintiff argues that a proper investigation would have shown that he was factually innocent.  As was the case in *Edwards v. Balisok*, the implications of a finding that Plaintiff was denied due process would certainly undermine the underlying disciplinary convictions.  Consequently, all claims relative to the April 30 and May 29 disciplinary reports will be dismissed without prejudice.

**<u>The April 26/May 8 Disciplinary Report</u>**

Relative to disciplinary report issued April 26 but purportedly "pre-dated" to May 8, Plaintiff contends prison housing records exonerate him.  More specifically, he contends he was not in segregation, so he could not have sought to fix his segregation problem—something a proper investigation would have shown.  Plaintiff received six months in segregation.

Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation.  This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report."  *Hadley v. Peters,* 841 F.Supp. 850, 856

(C.D.Ill.1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted).  Even if Plaintiff's right to due process was violated at the disciplinary hearing, an "inmate's liberty interest in avoiding segregation is [still] limited."  *Hardaway v. Meyerhoff, et al.,* 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir. 2009)).  A protected liberty interest arises only if Plaintiff's confinement in segregation "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "  *Hardaway,* 734 F.3d at 743 (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).  Courts consider two factors when making this determination: "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured."  *Id.* at 743 (citing *Marion,* 559 F.3d at 697–98) (emphasis in the original)).

Plaintiff was disciplined with six months in segregation.  In *Hardaway*, the disciplinary sentence was six months and one day, which the appellate court found was, by itself, insufficient to rise to the level of a Fourteenth Amendment violation.  *Hardaway,* 734 F.3d at 744.  The second amended complaint does not claim that placement in segregation presented an atypical and significant hardship.  Therefore, the due process claims regarding the April 26/May 8 disciplinary report will be dismissed without prejudice.

### The May 26 Disciplinary Report

The May 26 disciplinary charges of bribery and extortion relative to Plaintiff trying to offer sex with his girlfriend in exchange for a cell phone resulted in Plaintiff receiving one year in segregation, which is, alone, sufficient permit the Court to assume at this early juncture that due process protections have been triggered. *See Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 698 (7th Cir. 2009) (noting that a "claim of confinement in segregation for 240 days may implicate a liberty interest").  Even when a liberty interest is triggered, prisoners should keep in

mind that the process due under the Fourteenth Amendment to the United States Constitution is rather minimal.

To satisfy due process, an inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed.  *See Wolff v. McDonnell,* 418 U.S. 539, 563–69 (1974); *Piggle v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003).  In addition, the decision of the adjustment committee must be supported by "some evidence."  *Black v. Lane,* 22 F.3d 1395 (7th Cir. 1994).

According to the second amended complaint, Plaintiff requested his cellmate as a witness to the conversation underlying the charge, but the investigator, Rebecca Cowan, and Adjustment Committee members Timothy Veath and Minh Scott did not interview or call the witness, instead relying solely upon the reporting officer's report without further explanation. Nevertheless, on appeal, Administrative Review Board member Sherry Benton and IDOC Director Godinez did not investigate or overturn the disciplinary conviction.  At this early point, questions regarding the hearing and subsequent review warrant allowing the due process claims to proceed against Defendants Cowan, Veath, Scott, Benton and Godinez.  These allegations shall be designated as "Count 1."

None of the other defendants are mentioned in the second amended complaint relative to the May 26 disciplinary action, so they shall all be dismissed without prejudice, as no colorable claims have been pleaded against them

**<u>Disposition</u>**

   **IT IS HEREBY ORDERED** that, for the reasons stated, all due process claims regarding the disciplinary proceedings stemming from the April 30, April 26/May 8 and May 29, 2012, disciplinary reports, and Defendants **BRANDON ANTHONEY, MICHAEL ATCHISON, DAVID JOHNSON and RICHARD HARRINGTON** are **DISMISSED without prejudice**.

   **IT IS FURTHER ORDERED** that **COUNT 1**, the due process claims Defendants **S.A. GODINEZ, TIMOTHY VEATH, SHERRY BENTON and MINH SCOTT** relative to the disciplinary proceedings stemming from the May 26, 2012, disciplinary report, shall **PROCEED**.  All Defendants are sued in their individual capacities, and Defendant Godinez is also sued in his official capacity for purposes of injunctive relief.

   The Clerk of Court shall prepare for Defendants **S.A. GODINEZ, TIMOTHY VEATH, SHERRY BENTON and MINH SCOTT**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.   If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

   With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel (Doc. 11).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 13, 2015**

                                        *s/J. Phil Gilbert*
                                        **United States District Judge**